UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JILLYNNE ZELLER, an individual;<br><br>Plaintiff,<br>v.<br><br>NORTHERN BIOMEDICAL RESEARCH, INC, a Michigan Corporation; SHANE WOODS, an individual; DEAN HAAN, an individual;<br><br>Defendants.<br>_______________________________/ | No. 1:22-cv-01103<br><br>Hon. |

**COMPLAINT**

Plaintiff Jillynne Zeller seeks recovery from Defendants Northern Biomedical Research, Inc. ("Northern Biomedical"), its President, CEO, and director Shane Woods, and one of its former directors Dean Haan, for their fraud in purchasing Zeller's stock in Northern Biomedical. In violation of their legal duties, Defendants failed to disclose to Zeller that at the same time they were engaging Zeller to sell her stock, they were striking a deal with a private equity company, Avista Capital Partners ("Avista Capital") for a capital infusion at nearly *four times* the valuation they paid Zeller for her stock.

**JURISDICTION AND VENUE**

1. Plaintiff alleges claims under the 1933 Securities Exchange Act and various provisions of Michigan law.

2. This Court has subject matter jurisdiction over Plaintiff's Securities Exchange Act claims pursuant to 28 U.S.C. §§ 1331, because the claims arise under federal law.

3. This Court also has supplemental jurisdiction over the state law claims based on 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case and controversy.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Defendants are subject to personal jurisdiction in this judicial district, and the actions alleged herein occurred in this district.

## PARTIES

5. Plaintiff Jillynne Zeller is a resident of Muskegon County, Michigan.

6. Defendant Northern Biomedical Research, Inc. is incorporated in the State of Delaware, with headquarters in Norton Shores, Michigan.

7. Defendant Shane Woods is a resident of Michigan and employed in Norton Shores, Michigan.

8. On information and belief, Defendant Dean Haan resides in this District.

## BACKGROUND

**Plaintiff works for Northern Biomedical before Defendants purchase its assets.**

9. Zeller began working for Northern Biomedical in 1996. The company was owned by Bob Boyd at that time.

10. Over the two decades of her employment, Zeller moved from her starting position as research technician to lead research technician to study director to research coordinator to facility manager to director of laboratory services.

11. In 2006, Bob Boyd awarded Zeller stock in Northern Biomedical as recognition for her tireless efforts toward the advancement of the company. Around that same time, she was given a seat on the company's board of directors.

**Defendants purchase Northern Biomedical's assets.**

12. In 2019, Zeller, Boyd, and the third shareholder in Northern Biomedical, Eric Adams, decided they would sell Northern Biomedical's assets to a group of four businessmen: Shane Woods, Dean Haan, Joshua Bartoe, and Mark Johnson of BHJW Biomedical Research Corp. ("**BHJW**").

13. Messrs Woods, Haan, Bartoe, and Johnson created BHJW for the purpose of engaging in this sale transaction.

14. The sale was effected through an Asset Purchase Agreement.

15. The three sellers—Zeller, Boyd, and Adams—received stock in BHJW through Shareholder Agreement as part of the Asset Purchase Agreement. (See **Exhibit 1**, Shareholder Agreement.)

16. That purchase also included a Lease by which the property-owning entity NBR Investment Properties, LLC, would lease the building out of which Northern Biomedical operates to Northern Biomedical.

17. Under that Lease, Northern Biomedical also had an option to purchase the building.

18. BHJW later changed its name to Northern Biomedical Research, Inc., to take advantage of the goodwill that Zeller, Boyd, and Adams had built in the company and that name.

19. After the sale, Zeller continued her employment and was promoted to director of laboratory services for the new Northern Biomedical.

20. After the sale, Defendant Dean Haan became president of Northern Biomedical, and later, Defendant Shane Woods became President and CEO of Northern Biomedical.

21. On information and belief, both Woods and Haan were members of Northern Biomedical's board of directors at the times relevant to this matter.

22. Slowly, beginning in mid-2020, Woods, Haan and their cohorts in the purchase, Mark Johnson and Joshua Bartoe, began cutting Zeller, Boyd, and Adams out of decision making and, importantly, began withholding information on the company's operations and goals.

23. From that time until her departure, Zeller's duties were slowly pared away.

24. But rather than engage in open discussions about this, Defendants would simply hire a new person or shift Zeller's responsibilities to a different person in the organization, and Zeller's first indications of these maneuvers would be when those new individuals came to Zeller to ask how to perform these duties.

**Unbeknownst to Zeller, Defendants begin talks with Avista Capital in November 2020 for capital infusion in Northern Biomedical**

25. Without Zeller's knowledge, Woods and Haan began exploring options for capital infusion into the company.

26. On information and belief, in November 2020, Defendants began serious negotiations with Avista Capital to invest in the company.

**Defendants redeem Zeller's shares in Northern Biomedical without disclosing Avista Capital negotiations and agreements in principle**

27. In December 2020, Northern Biomedical redeemed Bob Boyd's shares in the company.

28. Then, after Defendants accomplished their goal of paring down Zeller's major responsibilities, and since she was never informed of the massive investment immediately on the company's horizon, Zeller resigned her position at the company and began the process of redeeming her shares in the company.

29. On March 18, 2021, the company sent Zeller a letter regarding the redemption. (**Exhibit 2**, Redemption Letter.)

30. The letter states that the redemption was valued per Section 8(a) of the Shareholder Agreement. (*Id.*)

31. The purchase price for Zeller's stock was based on a May 31, 2020 valuation by Rehmann, which valued Northern Biomedical at $21,244,000. (*Id.*)

32. On information and belief, when it rendered its May 2020 valuation, Rehmann was also not advised of the prospect of a massive capital infusion in the company by Avista Capital.

33. Based on this valuation, Zeller's 200 shares—of the company's 8,400 then-outstanding shares (approximately 2.38%)—were valued at $505,607.20. (*Id.*)

34. Per Section 9 of the Shareholder Agreement, the purchase price was paid 10% in cash at closing the redemption and the remaining $455,046.48 were paid pursuant to a Promissory Note from the company. (*Id.*)

35. Through the closing of the redemption, Zeller was never told of the prospective investment by Avista Capital.

36. On July 1, 2021, Northern Biomedical closed the investment transaction with Avista Capital.

37. Avista Capital purchased 50% of the company's shares for **$40,000,000**.

38. At that $80,000,000 total valuation, Zeller's shares were worth $1,904,761.90. This is $1,399,154.70 more than the company paid her for the same shares, just a short time earlier, though they knew all along that this massive investment was coming.

39. Defendants had full knowledge of the impending, substantial transaction and likely the major financial terms of the arrangement they were undertaking with Avista Capital when they purchased Zeller's shares.

40. In fact, Defendants recognize that their actions were inequitable.

41. Shortly after Zeller's redemption closed, Dean Haan, then a member of Northern Biomedical's board of directors, told another shareholder of Northern Biomedical that he felt bad for Jill. And he expressly recognized that if Zeller had stayed slightly longer, she would have received a higher valuation of her shares from the Avista purchase.

42. Unfortunately, though, this moral compunction was apparently no match for Defendants' greed.

**COUNT I:**
**VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT [15 U.S.C. § 78J(B)] AND RULE 10B-5 THEREUNDER [17 C.F.R. § 240.10B-5]**

43. Plaintiff reincorporates the foregoing allegations as if restated fully here.

44. The stock repurchased by Northern Biomedical from Zeller constitutes a "security" pursuant to 15 U.S.C § 78c(a)(10).

45. Northern Biomedical is in contractual privity with Zeller, as it repurchased the stock at issue directly from her.

46. Northern Biomedical and its officers and board of directors owed a fiduciary duty to Zeller, as a minority shareholder in the company.

47. Defendants failed to disclose to Zeller the negotiations being conducted with Avista Capital for a massive capital infusion in the company.

48. Rather than tell Zeller of the negotiations occurring and the suggested valuations and terms being exchanged in those negotiations, Defendants redeemed Zeller's stock at the prior year's valuation of the company, which they knew was significantly lower than the valuation being ascribed by Avista Capital.

49. Defendants knew they were omitting this disclosure from Zeller, or were reckless as to their omissions.

50. Zeller relied on her belief in Defendants' duties to disclose information that was material to the redemption of her stock.

51. Zeller's belief that Defendants disclosed to her all material facts about the security being redeemed was material to her decision to sell her stock back to the company.

52. By engaging in the conduct described above, Defendants, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

a. With scienter, employed devices, schemes, or artifices to defraud;

b. With scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c. With scienter or negligence, engaged in transactions, practices, or courses of business, which operated or would operate as a fraud or deceit upon Zeller.

53. Zeller has been damaged by Defendants' fraud by being deceived into selling her stock for a price much lower than what Defendants knew was its then-present value.

## COUNT II:
## VIOLATION OF MICHIGAN UNIFORM SECURITIES ACT OF 2002

54. Plaintiff reincorporates the foregoing allegations as if restated fully here.

55. The stock repurchased by Northern Biomedical from Zeller constitutes a "security" pursuant to Mich. Comp. Laws § 451.2102c(c).

56. Northern Biomedical and its officers and board of directors owed a fiduciary duty to Zeller, as a minority shareholder in the company.

57. Defendants failed to disclose to Zeller the negotiations being conducted with Avista Capital for a massive capital infusion in the company.

58. Rather than tell Zeller of the negotiations occurring and the suggested valuations and terms being exchanged in those negotiations, Defendants redeemed Zeller's stock at the prior year's valuation of the company, which they knew was significantly lower than the valuation being ascribed by Avista Capital.

59. Defendants knew they were omitting this disclosure from Zeller, or were reckless as to their omissions.

60. Zeller relied on her belief in Defendants' duties to disclose information material to the redemption of her stock.

61. Zeller's belief that Defendants disclosed to her all material facts about the security being redeemed was material to her decision to sell her stock back to the company.

62. By engaging in the conduct described above, Defendants have violated Mich. Comp. Laws § 451.2501.

63. Zeller has been damaged by Defendants' fraud by being deceived into selling her stock for a price much lower than what Defendants knew was its then-present value.

64. Zeller is entitled to recover her actual damages, any income received on the security, costs, and attorneys' fees per Mich. Comp. Laws § 451.2509(3).

**COUNT III:**
**VIOLATION OF COMMON LAW FIDUCIARY DUTIES**

65. Plaintiff reincorporates the foregoing allegations as if restated fully here.

66. Northern Biomedical and its officers and board of directors owed a fiduciary duty to Zeller, as a minority shareholder in the company.

67. Defendants failed to disclose to Zeller the negotiations being conducted with Avista Capital for a massive capital infusion in the company.

68. The above-described material omissions constituted a violation of Defendants' fiduciary duty to act in the best interest of Zeller when she owned the company's stock.

69. Zeller has been damaged by Defendants' breach of their duties by being deceived into selling her stock for a price much lower than what Defendants knew was its then-present value.

**COUNT IV:**
**VIOLATION OF MICHIGAN BUSINESS CORPORATIONS ACT**

70. Plaintiff reincorporates the foregoing allegations as if restated fully here.

71. Defendants owed duties to Zeller pursuant to the Michigan Business Corporations Act, Mich. Comp. Laws § 450.1101 *et seq.*

72. By committing the above-described fraud against Zeller, Defendants have engaged in behavior that was illegal, fraudulent, or willfully unfair and oppressive" to Zeller in violation of Mich. Comp. Laws § 450.1489.

73. Zeller has been damaged by Defendants' fraud by being deceived into selling her stock for a price much lower than what Defendants knew was its then-present value.

**COUNT V:**
**FRAUDULENT MISREPRESENTATION/FRAUDULENT OMISSION/ FRAUDULENT INDUCEMENT**

74. Plaintiff reincorporates the foregoing allegations as if restated fully here.

75. Defendants failed to disclose to Zeller the negotiations being conducted with Avista Capital for a massive capital infusion in the company.

76. Rather than tell Zeller of the negotiations occurring and the suggested valuations and terms being exchanged in those negotiations, Defendants redeemed Zeller's stock at the prior

year's valuation of the company, which they knew was significantly lower than the valuation being ascribed by Avista Capital.

77. This omission was material to Zeller's decision to execute the share redemption agreement with the company.

78. Defendants knew they were omitting this disclosure from Zeller, or were reckless as to their omissions.

79. Defendants intended for Zeller to rely upon their omission of material information in entering the share redemption agreement.

80. Zeller relied on her belief in Defendants' duties to disclose information material to the redemption of her stock.

81. Zeller's belief that Defendants disclosed to her all material facts about the security being redeemed was material to her decision to sell her stock back to the company.

82. By engaging in the conduct described above, Defendants have committed fraud against Zeller.

83. Zeller has been damaged by Defendants' fraud by being deceived into selling her stock for a price much lower than what Defendants knew was its then-present value.

**REQUESTED RELIEF**

Plaintiff requests that the Court enter judgment:

A. Awarding Plaintiff all damages, in an amount to be proven at trial, sustained as a result of Defendant's foregoing conduct;

B. Awarding Plaintiff her attorneys' fees and costs incurred in prosecuting this matter; and

C. Awarding Plaintiff all other relief the Court deems just and proper.

WARNER NORCROSS + JUDD LLP

Dated: November 22, 2022

Charles N. Ash, Jr. (P55941)
Brandon J. Cory (P83112)
Janelle E. Shankin (P85627)
150 Ottawa Ave., NW, Suite 1500
Grand Rapids, Michigan 49503
616.752.2000
cash@wnj.com
bcory@wnj.com
jshankin@wnj.com
*Attorneys for Plaintiff Jillynne Zeller*